**Norman F. DACEY, Plaintiff-Appellant,**

v.

**The FLORIDA BAR, INC., et al.,**
**Defendants-Appellees.**

**No. 27018.**

United States Court of Appeals
Fifth Circuit.

July 22, 1969.

---

Arthur J. Berk, Courshon & Berk, Miami Beach, Fla., for appellant.

William C. Steel, William B. Killian, Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., for The Florida Bar.

Herbert L. Nadeau, Shutts & Bowen, William M. Hoeveler, Miami, Fla., for other appellees.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the U. S. Court of Claims.

DAVIS, Judge:

Some time back, plaintiff-appellant Norman F. Dacey wrote a book called "How to Avoid Probate", which has stirred some flapping of wings in the legal aviary. This work was reviewed by Boyd H. Anderson, Jr., in an issue of the The Florida Bar Journal, a monthly publication of defendant-appellee, The Florida Bar (the Bar). Considering himself injured by the book-review, Dacey brought this action in the District Court for libel against Anderson and the Bar. The gravamen of the alleged defamation was that the article said, incorrectly, that plaintiff had been convicted in Connecticut of unauthorized practice of law. Jurisdiction in the court below was rested on diversity of citizenship, 28 U.S.C. § 1332, Dacey being a Connecticut citizen and the defendants said to be citizens of Florida.

The Bar moved to dismiss on the ground that it was an integral component of the State of Florida, which had not consented to be sued, and was therefore immune from liability for defamation. The district court granted this motion and dismissed the complaint as to the Bar with prejudice. The judge directed that final judgment be entered under F. R.Civ.P. Rules 54(b) and 58. Dacey has appealed from that final order.[1]

In 1949, the Supreme Court of Florida granted a petition by the then voluntary Florida State Bar Association (and others) that the bar of that State be integrated. Petition of Florida State Bar Ass'n, Fla., 40 So.2d 902 (1949). The court held that it had inherent power, under the Florida Constitution, to integrate the bar by rule of court, and that neither an express grant in the Constitution nor an act of the legislature was a prerequisite. After this ruling, the court issued its Integration Rule carrying the holding into effect, 32 Florida Statutes Annotated, p. 497. The preamble to this Rule designates the Florida Bar as "a body created by and existing under the authority of this Court" and "as an official arm of this Court". All Florida lawyers are required to maintain membership in the Bar and to pay

---

* Sitting by designation.

1. The case continued against Anderson, the other defendant.

membership fees and dues to it. The members elect the Bar's governing officials. Among its activities the Bar publishes The Florida Bar Journal; the Integration Rule expressly contemplates that such a periodical be issued.

The best source for discovering the status of the Integrated Bar vis-à-vis the State of Florida lies in the pronouncements of the Supreme Court of Florida.[2] The 1949 opinion squarely placed the power to establish the integrated bar on the court's inherent authority endowed upon it by the Florida Constitution: "Under our form of government it is the right that each department of government has to execute the powers falling naturally within its orbit when not expressly placed or limited by the existence of a similar power in one of the other departments". 40 So.2d at 905. The Integration Rule declares that the Bar is "a body created by and existing under the authority of this [the Supreme] Court" and is "an official arm of this Court". In 1962, the Supreme Court, on petition of the Bar, specifically ruled that "The Florida Bar, a body created by and existing as an agency of the Judicial branch of government under the constitutional powers of this Court, is a legal entity capable of taking and holding title to real property and of mortgaging and conveying the same". In the Matter of The Florida Bar (Case No. 32,132), decided November 21, 1962.[3]

What this adds up to, as we understand it, is a determination by the Florida Supreme Court that the Florida Bar is an integral part of the judicial branch of the government of that state. Plaintiff-appellant insists, however, that this cannot be so. The gist of his argument is that all the Supreme Court did was to transform the pre-existing voluntary Florida State Bar Association into a professional group with compulsory membership, and that the Integrated Bar does not conform to the concept of a state agency as that type of entity is known to the Florida Constitution. In the latter connection, he says that under the former State Constitution, F.S.A. (Art. III, Sec. 27) all state officials had either to be elected or appointed by the governor,[4] but that Bar officers are and have been selected by the Bar's membership; that the Bar undertakes activities alien to a state agency, such as publication of the Journal[5] and maintenance of a "clients security fund" to reimburse those suffering loss on account of the dishonesty of their lawyers; and that it would be anomalous for a state agency to obtain its funds from membership dues rather than from public revenues.

The cardinal error in plaintiff's position is the failure to recognize that the Florida Supreme Court did not simply endow the old, voluntary Florida State Bar Association with state-granted powers but established a new entity directly responsible to the court. As we have pointed out, the court's rationale in granting the petition to integrate was that it had inherent authority, under its constitutional powers, to integrate the bar, and its Integration Rule stated it "created" the Bar, a "body" "existing under the authority of this Court", as "an official arm" of the court.[6] The act

---

2. Florida law determines this status. Louisiana Land & Exploration Co. v. State Mineral Board, 229 F.2d 5, 7 (5 Cir., 1966), cert. denied, 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485.

3. The Bar desired to build a permanent headquarters building in Tallahassee.

4. "The Legislature shall provide for the election by the people or appointment by the Governor of all State and County officers not otherwise provided for by this Constitution, and fix by law their duties and compensation."

5. It is worth noting that such undoubted agencies of the Federal Government as the Administrative Office of the United States Courts and the Federal Judicial Center regularly publish news bulletins within their spheres.

6. Article I of the Rule provides: "The name of the *body created* by this Rule shall be THE FLORIDA BAR" (emphasis added).

of creation of a new body or entity was express. There was no direct line of descent from the former non-compulsory professional group.

By the same token, the Florida constitutional provisions, as well as the characteristics of other state agencies, which plaintiff invokes all fail to show that the Bar is something other than an agency of the State. The matters to which plaintiff points relate to agencies of the other branches of the State Government, not to the judicial branch. Under the Florida Constitution, the Supreme Court, as it has held, has inherent power to establish a state institution like the Florida Bar, because bar integration is a "judicial function", and lawyers are not state or county officers[7] but officers of the court "and as such constitute an important part of the judicial system". 40 So.2d at 906, 907. Similarly, the court held that "the doctrine of implied powers necessarily carries with it the power to impose" a membership fee as a means of defraying the expense of the integrated Bar. 40 So.2d at 906–907. A judgment against the Bar would expend itself against funds which are directly devoted to the purposes of "an official arm" of the State Supreme Court— plainly a public purpose.[8]

Plaintiff makes some argument that it would be a violation of equal protection for Florida to make the Bar an agency of the State without according the same status to the medical society and other professional associations. One answer,

of course, is that the bar of a state has such a close connection to the judiciary —"the law practice is * * * intimately connected with the exercise of judicial power in the administration of justice", Petition of Florida State Bar Association, *supra*, 40 So.2d at 907— that it is reasonable for Florida to treat it differently from other professions.

 Since the Florida Bar is an agency of the State of Florida, it follows that the District Court had no jurisdiction of this suit against it. We need not decide whether the Bar, though an agency of Florida, is suable under state law for a tort. Cf. Seaboard Air Line R.R. Co. v. Sarasota-Fruitville Drainage District, 255 F.2d 622 (5 Cir. 1958). Even if that is so, there is no jurisdiction on the ground of diversity of citizenship under 28 U.S.C. § 1332. A state is not a "citizen" for the purposes of that provision (State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 199–200, 49 S.Ct. 104, 73 L.Ed. 262 (1929); De Long Corp. v. Oregon State Highway Commission, 343 F.2d 911 (9 Cir. 1965), affirming 233 F. Supp. 7, 10 (D.Ore.1964)), whether or not the state makes itself suable on the particular claim. Krisel v. Duran, 386 F.2d 179, 181 (2 Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L. Ed.2d 303. In that respect, 28 U.S.C. § 1332 differs from the Eleventh Amendment. O'Neill v. Early, 208 F.2d 286, 289 (4 Cir. 1953).

The judgment is affirmed.

---

7. This statement by the Supreme Court was apparently a reference to Section 27, Article III of the former State Constitution, quoted *supra* in note 4.

8. It is not essential in Florida that a state agency obtain its funds from taxes. See Spangler v. Florida State Turnpike Au-

thority, 106 So.2d 421, 422 (Fla.1958), holding that Authority a state agency even though, *inter alia*, "its revenues are derived primarily from tolls charged for the use of the road" and are devoted to a special public purpose, i. e. highway construction and maintenance.